IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GIAO PHONG LE NGUYEN,

       Petitioner,

v.                                                         2:25-cv-01198-KWR-JMR

KRISTI NOEM, *in her official capacity as*
*Secretary of the Department of Homeland Security*;
PAMELA BONDI, *in her official capacity as*
*Attorney General of the United States*;
TODD M. LYONS, *in his official capacity as*
*Acting Director and Senior Official Performing*
*the Duties of the Director of U.S. Immigration and*
*Customs Enforcement*;
MARY DE ANDA-YBARRA, *in her official capacity*
*as Field Office Director of the El Paso Field Office*
*of U.S. Immigration and Customs Enforcement,*
*Enforcement and Removal Operations*; and
DORA CASTRO, *in her official capacity as Warden*
*of the Otero County Processing Center*,

       Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner Giao Phong Le Nguyen's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, filed on December 2, 2025. Doc. 1 On January 27, 2026, the Federal Respondents filed a response. Doc. 11. The following day, they filed an additional declaration. Doc. 12. Warden Dora Castro has joined in the Federal Respondents' position. Doc. 6. On February 10, 2026, Petitioner filed a reply. Doc. 14. United States District Judge Kea W. Riggs referred this case to me pursuant 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to recommend an ultimate disposition. Doc. 13. Having considered the parties' submissions and the relevant law, I conclude that Petitioner is entitled to relief. Therefore, I recommend that the Court GRANT the petition because Mr. Nguyen is being indefinitely detained without a

"significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

I.   **Background**

Mr. Giao Phong Le Nguyen has been in immigration detention since January 20, 2025—nearly thirteen months. Doc. 11 at 2. He is currently incarcerated at the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 at 3.

Mr. Nguyen is a Vietnamese citizen. Doc. 11 at 2. He entered the United States as a child refugee on February 24, 1989. *Id.* He has lived in the United States ever since. Mr. Nguyen was a lawful permanent resident. *Id.* But, in 1996, Mr. Nguyen was convicted of "permitting [the] discharge of [a] firearm from [a] vehicle," when he was 17 years old. Doc. 11-1 at 1. As a result of this conviction, Mr. Nguyen was ordered removed to Vietnam. Doc. 11 at 2. His removal order became final on September 13, 2005, after the Board of Immigration Appeals dismissed his appeal. *Id.* But Mr. Nguyen was not removed. *Id.* Instead, he was released from detention on an order of supervision. *Id.*

On January 20, 2025, the federal government unexpectedly arrested Mr. Nguyen at a traffic check point. *Id.* He has remained in detention since. The Respondents report that they have made the following efforts to remove Mr. Nguyen.

- On January 29, 2025, pre-removal checks were completed for Nguyen. His file was forwarded to the travel team for removal.

- On February 13, 2025, ERO provided Nguyen with a DHS Form I-217, Information for Travel Document or Passport, and a passport application. Nguyen filled out the provided documents.

- On March 11, 2025, the request for a travel document was mailed.

- On April 22, 2025, ERO reached out to the assigned Detention and Deportation Officer to request a status update on the issuance of travel documents for Nguyen.

- On November 17, 2025, ERO contacted the Vietnamese Consulate to request a status update on the issuance of travel documents for Nguyen.

- On November 19, 2025, ERO contacted translation services to request translation of three documents from English to Vietnamese and was informed the translation would be complete on December 3, 2025.

- On December 3, 2025, the translated documents were received, and the travel document request was submitted to ERO headquarters.

- On January 27, 202[6],[1] ERO was informed by the assigned Detention and Deportation Officer that the travel document request is still being processed and there is a backlog of travel document requests for Vietnam.

Doc. 11 at 2–3 (footnote omitted).

## II.  The Parties' Arguments

Mr. Nguyen seeks his immediate release. Doc. 1 at 18. He argues that his continued detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution; Immigration and Nationality Act ("INA") and its implementing regulations; and the Administrative Procedure Act ("APA"); and the *Accardi* doctrine.[2] Doc. 1 at 15–19.

The Respondents argue that Petitioner's Due Process rights were not violated, that the APA challenge is barred, and that Petitioner's continued detention is lawful. Doc. 11 at 4–6.

---

[1] Respondents wrote that this event occurred on "January 27, 2025." *See* Doc. 11 at 3. Because of where this date falls in the Respondents' timeline, the Court presumes this was a typographical error, and the Respondents intended to write "January 27, 2026." *See id.*

[2] In *Accardi*, the Supreme Court held that an agency must follow its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)

### III.     Discussion

I recommend that the Court find that Mr. Nguyen's Fifth Amendment rights are being violated by his indefinite detention. *Infra* § III(A); *see also Zadvydas v. Davis*, 533 U.S. 678 (2001).  I further recommend that the Court decline to address Mr. Nguyen's other requests for relief. *Infra* § III(B).

Based on these findings, I recommend that the Court order Mr. Nguyen's immediate release and restore his Order of Supervision under the same terms as were in place before his arrest.

**A.  I recommend that the Court find that Mr. Nguyen is entitled to habeas relief because his Fifth Amendment rights are being violated.**

This Court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687–88).

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."[3] 8 U.S.C. § 1231(a)(1)(A). This period of time is called the "removal period." *Id.* The removal period begins once the removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed on appeal or the time to file an appeal has expired, 8 U.S.C. § 1101(a)(47)(B). In certain enumerated circumstances, an alien "may be detained beyond the removal period." § 1231(a)(6); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021) (discussing the circumstances where an alien may remain "detained after 90 days have passed").

However, in *Zadvydas*, the Supreme Court explained that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As such, the Court construed § 1231(a)(6) to limit "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

Under *Zadvydas*, six months of post-removal order detention is "presumptively reasonable." *Id.* at 701. After this point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This presumption does not mean that every alien must be released if not removed after six months in detention. *Id.* Rather, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

---

[3] I recognize that some consider the term "alien" to be pejorative. However, the term "alien" is used in the relevant statutory framework. I use the word only to avoid legal imprecision or ambiguity that may be caused by using an alternative word.

5

To show that a petitioner has a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," they are not required to "show the absence of *any* prospect of removal." *Id.* at 702. Instead, they are only required to provide a "good reason to believe" that removal is unlikely—"[t]his distinction is not a matter of semantics, but an important clarification of Petitioner's burden at this stage. *Aguilar v. Noem*, No. 25-CV-03463-NYW, 2025 WL 3514282, at *4 (D. Colo. Dec. 8, 2025) (citation omitted). Courts have found that such a "good reason" exists when the presumptively reasonable six months of detention have passed, and other circumstances also indicate that there is no significant likelihood of removal. *See, e.g.*, *Ahrach v. Baltazar*, No. 25-CV-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025) (Petitioner detained for roughly seven months and "ICE made no efforts to remove [her] beyond soliciting acceptances" from three countries on just one day); *Salazar-Martinez v. Lyons*, No. 2:25-CV-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (Petitioner detained for seven months and "ICE has not 'identif[ied] any country that has agreed to accept her'"); *Zhuzhiashvili v. Carter*, No. 25-3189-JWL, 2025 WL 2837716, at *2 (D. Kan. Oct. 7, 2025) (Petitioner detained for seven months and "officials have made no progress towards his removal or even identified a possible destination"); *Vargas v. Noem*, No. 25-3155-JWL, 2025 WL 2770679, at *2 (D. Kan. Sept. 29, 2025) (Petitioner detained for nine months and "officials have not been able even to name for him any country to which an inquiry has been made or to which petitioner might possibly be removed"). Notably, "[t]he mere fact that the requisite six months have now elapsed is not sufficient to meet [Petitioner's] burden." *Reyna-Salgado v. Noem*, No. 25-3172-JWL, 2025 WL 3209007, at *2 (D. Kan. Oct. 3, 2025) (citing *Zadvydas*, 533 U.S. at 701).

After a petitioner has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden turns to the respondents to rebut the petitioner. *Zadvydas*, 533 U.S. at 701. The respondents must provide "evidence" in rebuttal. *See id.* "Unsubstantiated assertions do not meet this burden." *Aguilar*, 2025 WL 3514282, at *6 (citing *Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) (collecting cases)). "[U]nilateral effort without establishing actual progress toward removal" is also insufficient. *Lorenzo v. Bondi*, No. 2:25-CV-00923 KWR-GJF, 2026 WL 84521, at *5 (D.N.M. Jan. 12, 2026). "[G]ood faith efforts to effectuate . . . deportation" without a significant likelihood of reasonably foreseeable removal are similarly insufficient. *Zadvydas*, 533 U.S. at 702.

"[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701; *see also Arthur v. Mukasey*, No. CIV.A.09CV00059MSKKM, 2010 WL 234936, at *1 n.1 (D. Colo. Jan. 19, 2010) ("As the period of detention grows, so does the burden on the government to demonstrate that removal is reasonably foreseeable.").

Finally, the Respondents' allegations, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

In this case, Mr. Nguyen is entitled to habeas relief because he is being detained with no likelihood of removal in the reasonably foreseeable future.

1. **Mr. Nguyen has shown that there is good reason to believe that removal is unlikely because he has been in custody for over six months and other circumstances indicate that there is no significant likelihood of removal in the reasonably foreseeable future.**

Mr. Nguyen has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Mr. Nguyen has been detained for almost thirteen months, and there are no signs that his removal is impending. As Mr. Nguyen explains, repatriation for Vietnamese citizens who arrived in the United States after July 12, 1995, is much simpler than repatriation for those who arrived before July 12, 1995. Doc. 1 at 6. Mr. Nguyen arrived in the United States on February 24, 1989. Doc. 11 at 2. . Mr. Nguyen represents that "[b]etween September 2021 to September 2023, Vietnam issued travel documents to only four pre-1995 Vietnamese immigrants whom ICE sought to deport." *Id.* at 6. He also provides the Court with a sworn declaration from Tin Thanh Nguyen, an immigration lawyer who specializes in cases involving Vietnamese citizens. Doc. 14-4. Mr. Tin Thanh Nguyen opines that "it is highly unlikely that the Government of Viet Nam will issue a travel document for Mr. Giao Phong Le Nguyen in the reasonably foreseeable future." Doc. 14-1 at 4 ¶ 19; *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 716–17 (W.D. Wash. 2025) (another § 2241 petition where a judge considered Tin Thanh Nguyen's sworn declaration regarding Vietnamese repatriation). Mr. Tin Thanh Nguyen explains that "[w]hen a person has no remaining family in Viet Nam or no one who can confirm their identity or residence," as is the case for Petitioner Nguyen—"the Vietnamese government often does not move forward with the verification process," required to issue travel documents. Doc. 14-1 at 3–4 ¶¶ 11, 17. Based on this information combined with the length of Petitioner Nguyen's detention, Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701; *see also Dao v. Bondi*, No. 2:25-CV-02340-LK, 2026 WL 18626, at *4 (W.D. Wash. Jan. 2, 2026) (similarly finding that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future given the uncertain and protracted process for procuring travel documents for pre-1995 Vietnamese immigrants."); *Abubaka v. Bondi*, No. 2:25-cv-1889 RSL, 2025 WL 3204369, at *4 (W.D. Wash. Nov. 17, 2025) (same).

2. **Although they have set forth some efforts, Respondents have not met their burden to show evidence of a significant likelihood of removal in the reasonably foreseeable future.**

The Respondents have not met their burden to show that there is a significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. While the Respondents have provided some evidence to rebut Petitioner's showing, *see* Docs. 11-1–11-3, 12, the evidence is insufficient. Mr. Nguyen's detention has lasted more than twice the length of time the Supreme Court decided was "presumptively reasonable" in *Zadvydas*. *See* 533 U.S. at 701. Given this prolonged detention, "what counts as the 'reasonably foreseeable future'" must conversely shrink. *Id.*

For the first ten months of Mr. Nguyen's detention, the government made no real progress on his removal. While the government took some minor steps to effectuate his removal, no actual progress was made until the Vietnamese Consulate responded to the government on November 17, 2025. Doc. 12 at 3 ¶ 12; *see also Lorenzo*, 2026 WL 84521, at *5 ("[U]nilateral effort without establishing actual progress toward removal" is insufficient to meet the Respondent's burden.). That said, "[g]eneral indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Dao*, 2026 WL 18626, at *4. The same is true here. The Court has no indication that Vietnam has agreed to repatriate Mr. Nguyen.

The Respondents explain that a "travel document request was submitted to ERO headquarters" on December 3, 2025. Doc. 12 at 3 ¶ 14. They also represent that "Vietnam is issuing travel documents on average within thirty days of the request." *Id.* ¶ 16. But as of January 27, 2026, Mr. Nguyen's "travel document request is still being processed" because "there is a backlog of travel document requests for Vietnam." *Id.* at ¶ 15. The Respondents do not explain why despite Vietnam typically issuing travel documents "within thirty days," the request for travel documents for Mr. Nguyen specifically is delayed. Mr. Nguyen, himself, does offer an explanation, however. *See* Doc. 14 at 12–13. He explains that "[w]here, as here, an individual fled Vietnam as a child, lacks documentation, and has no remaining relatives [in Vietnam] able to participate in the [Vietnamese Ministry of Public Security] investigation process, the likelihood that Vietnam will issue a travel document is extremely low." *Id.* at 12 (citing Doc. 14-1 ¶¶ 19–23). While Respondents assert that "in 2025 ICE successfully removed over 400 Vietnamese nationals to Vietnam," Doc. 11 at 3 n.1, they fail to distinguish between pre- and post-1995 Vietnamese arrivals. Although "ICE anticipates no impediments to securing the travel document and repatriating Nguyen to Vietnam in the reasonably foreseeable future," Respondents do not provide enough information for the Court to independently verify that assertion. *See* Doc. 12 at 3.

Notably, the Western District of Washington has decided a string of petitions that are strikingly similar to Mr. Nguyen's. *See, e.g.*, *Dao v. Bondi*, No. 2:25-CV-02340-LK, 2026 WL 18626 (W.D. Wash. Jan. 2, 2026); *Vo v. Bondi*, No. 2:25-CV-02244-DGE-GJL, 2025 WL 3653722 (W.D. Wash. Dec. 17, 2025); *Do v. Scott*, No. C25-2187RSL, 2025 WL 3496909 (W.D. Wash. Dec. 5, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025); *Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369 (W.D. Wash. Nov. 17, 2025). Like Petitioner

Nguyen here, *Vo*, *Do*, *Nguyen v. Scott*, and *Abubaka* all involve pre-1995 Vietnamese arrivals, who were ordered removed after a criminal conviction, were released on an order of supervision, were suddenly re-detained, then held in detention for more than six months. *Vo*, 2025 WL 3653722, at *1; *Do*, 2025 WL 3496909, at *1–2 (six months measured over multiple periods of detention); *Nguyen v. Scott*, 796 F. Supp. 3d at 710–12; *Abubaka*, 2025 WL 3204369, at *1; *see also Dao*, 2026 WL 18626, at *1 (Mr. Dao was identical in all respects except that he was not released after an order of removal). In all of these cases, the respondents provided varying degrees of detail of Vietnam's semi-recent "increased cooperation" with removals. *See Dao*, 2026 WL 18626, at *5; *see also Vo*, 2025 WL 3653722, at *5; *Do*, 2025 WL 3496909, at *4–5; *Nguyen v. Scott*, 796 F. Supp. 3d at 720–27; *Abubaka*, 2025 WL 3204369, at *4–5. And in all of these cases, the Western District of Washington found that the respondents failed to prove that the individual petitioner had a significant likelihood of removal in the reasonably foreseeable future based on the government's generalized assertions regarding removals to Vietnam. The *Nguyen v. Scott* Court explained, the respondents' evidence "[a]t most . . . establish[es] that Vietnam is accepting more of its citizens for repatriation, including at least some citizens who arrived in the United States before 1995." *Nguyen v. Scott*, 796 F. Supp. 3d at 725. However, "some possibility that Vietnam will accept Petitioner at some point," was "not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." *Id.* The same logic applies for Petitioner Nguyen in this case.

      The Respondents do not claim that Vietnam has agreed to accept Mr. Nguyen or provide him travel documents. They also do not provide any details of their contact with the Vietnamese consulate. And they are not attempting to deport Mr. Nguyen to a third county. Doc. 11 at 6. While it appears that the government has made some "good faith efforts to effectuate" Mr.

Nguyen's deportation, I have no reason to believe that there is a significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 702.

### 3. Petitioner Nguyen did not waive his *Zadvydas* claim.

Finally, I disagree with Respondents that Mr. Nguyen waived his *Zadvydas* claim. The respondents argue that "Petitioner does not challenge his detention based upon the length of detention, nor upon the significant likelihood of removal in the reasonably foreseeable future." Doc. 11 at 6. Thus, they argue that a *Zadvydas* claim "has not been properly brought before the Court." *Id.* Mr. Nguyen responds, and I agree, that:

> The Petition challenges Petitioner's prolonged post-final-order detention, alleges that removal is not reasonably foreseeable, and asserts that continued detention violates the Fifth Amendment and 8 U.S.C. § 1231(a)(6). ECF No. 1. That is the essence of a *Zadvydas* claim. *Zadvydas* does not require talismanic language or citation to a particular case name; it requires courts to assess whether continued detention exceeds the constitutional and statutory limits governing post-removal-order custody.

Doc. 14 at 7. While the bulk of the petition relates to Mr. Nguyen's re-detention, the petition does allege that he "has been detained for over ten months and his removal to Vietnam is not reasonably foreseeable." Doc. 1 at 2 ¶ 5, 5 ¶ 28. The petition also specifically asserts that Mr. Nguyen's Fifth Amendment Due Process rights have been violated. *Id.* at 15–17. With this, Mr. Nguyen sufficiently put a *Zadvydas* claim at issue in his original petition. Furthermore, the Respondents submitted reasonable argument and evidence to rebut a *Zadvydas* claim. The evidence submitted in this case is similar to the evidence the Respondents traditionally submit to rebut *Zadvydas* claims in this District. As such, the Respondents have been afforded a sufficient opportunity to be heard on the matter.

Based on the reasons described above, I find that Mr. Nguyen's Due Process rights have been violated by his indefinite detention. Therefore, I recommend that the Court grant his habeas petition and order his immediate release.

### B. The Court should decline to address Mr. Nguyen's remaining requests for relief.

I recommend that the Court decline to address Mr. Nguyen's remaining requests for relief.

The bulk of Mr. Nguyen's petition argues that his Due Process rights were violated by his re-detention prior to the revocation of his order of supervision. *See generally* Doc. 1. He also argues that the INA, APA, and the *Accardi* doctrine were violated for the same reason. Courts in similar circumstances have provided habeas relief based on such claims. *See, e.g.*, *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3477023, at *6 (W.D. Okla. Oct. 30, 2025), *report and recommendation adopted*, No. CIV-25-1157-SLP, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025) (granting habeas relief to a pre-1995 arrival, Vietnamese citizen because of "ICE's failure to provide Petitioner with the required notice before his renewed detention, and lack of apparent determination of changed circumstances necessitating revocation."); *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *5 (W.D. Wash. Jan. 23, 2026) (same); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (same). While this argument may provide an independent basis for relief, Petitioner more plainly has a meritorious *Zadvydas* claim. If this Court finds that Petitioner succeeds on his *Zadvydas* claim, his re-detention claims are moot. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it.").

Mr. Nguyen also requests that this Court "[e]njoin his removal or transfer outside the jurisdiction of this Court and the United States pending its adjudication of this petition." Doc. 1 at 18. This request will also be mooted if the Court accepts my recommendation. *See Smith*, 110 F.3d at 727.

Finally, Mr. Nguyen requests that the Court award "him his costs and reasonable attorney's fees." Doc. 1 at 18. Such a request is more commonly made by separate motion in this District so that the motion can provide a full accounting to the Court. If the Court adopts this recommendation, Petitioner may make a separate motion for fees.

### IV.   Recommendation

I recommend that the Court find that Mr. Nguyen's Fifth Amendment rights are being violated by his indefinite detention. *Supra* § III(A). I also recommend that the Court decline to address his remaining requests for relief. *Supra* § III(B).

Based on these recommended findings, I recommend that the Court GRANT Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1). I recommend the Court order Mr. Nguyen's immediate release and restore the Order of Supervision under the same terms as were in place before his arrest.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
JENNIFER M. ROZZONI
United States Magistrate Judge