IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————

GIAO PHONG LE NGUYEN,

        Petitioner,

      v.                                  Case No. 2:25-cv-01198 KWR-JMR

PAMELA BONDI, *Attorney General of the United States,*
KRISTI NOEM*, Secretary of the Department*
*of Homeland Security,* TODD M. LYONS, *Acting Director of*
*U.S. Immigration and Customs Enforcement*,
MARY DE ANDA-YBARRA, *Field Office Director*
*for Detention and Removal, and*
DORA CASTRO, *Warden of Otero County Processing Center*,

        Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**). Petitioner is subject to a final order of removal and is in detention pending his removal from the country under 8 U.S.C. § 1231. Prior to his most recent detention, he was on release under an Order of Supervision. Pet. ¶¶ 2-4. He asserts that when he was detained Respondents failed to follow the process set forth in 8 C.F.R. § 241.4(*l*) and § 241.13(i), violating the Administrative Procedure Act and his due process rights. *Id.* ¶ 7. Petitioner also asserts there is not a significant likelihood of his removal in the reasonably foreseeable future, and he should be released under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. ¶ 28.

The Court referred the Petition to United States Magistrate Judge Jennifer M. Rozzoni to provide proposed findings and a recommended disposition ("PFRD"). The Magistrate Judge

recommended that the Court grant the *Zadvydas* claim. She further recommended that the Court find the remaining claims moot. The Federal Respondents objected to the PFRD.

The Court adopts in part and rejects in part the Magistrate Judge's recommendation. The Court concludes that Petitioner is entitled to release under his *Zadvydas* claim as well as his other due process claim. Petitioner is entitled to release because he is detained without a significant likelihood of removal in the reasonably foreseeable future in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001). Moreover, his due process rights were violated when Respondents failed to follow the regulations, 8 C.F.R. § 241.4(*l*) and § 241.13(i). Therefore, having reviewed the parties' pleadings, briefing, and the relevant law, the Court finds that the Petition is well-taken and therefore is **GRANTED in part.** The Court orders Respondents to immediately release Petitioner.

## BACKGROUND

### I.    Factual Allegations.

Petitioner is a citizen of Vietnam. Ortez Decl. ¶ 5, Doc. 12. He was admitted to the United States as a refugee on February 24, 1989. *See* Notice to Appear, Doc. 11-1. His status was adjusted to Lawful Permanent Resident on July 10, 1990. *Id.* However, on March 7, 1996, Petitioner was convicted in a California court on charges stemming from a drive by shooting. *Id.* At the time of the shooting, Petitioner was seventeen but tried as an adult and sentenced to 120 days' imprisonment. Doc. 11 at 2 n.1.

Petitioner received a final order of removal on September 13, 2005 due to the criminal conviction. Ortez Decl. ¶ 5, Doc. 12; *cf.* Pet. ¶ 18, Doc. 1 (stating that immigration court ordered him removed in 2004). Petitioner asserts that he was released and placed on an order of supervision because Vietnam refused to repatriate Vietnamese nationals who fled the country as refugees. Pet. ¶ 19. Following his release, Petitioner asserts he appeared for all ICE check-ins, complied with the

terms of supervision, and lived in the community for thirty years without any further violations. *Id*. ¶ 20.

On January 20, 2025, ICE detained Petitioner without notice and without revoking his Order of Supervision. Pet. ¶ 2, Doc. 1; Ortez Decl. ¶ 6. Petitioner asserts that regulations under 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 required ICE to revoke his Order of Supervision prior to re-detaining him. *Id.* ¶ 3. He also asserts that the regulations require Respondents to consider whether his removal is significantly likely in the reasonably foreseeable future. § 241.13. Petitioner asserts that ICE previously told him that if Vietnam ever agreed to accept his repatriation, ICE would notify him and provide him time to prepare for his departure.  Pet. ¶ 26.

Petitioner asserts that he is not a flight risk or danger to the community, as he committed no further criminal offenses for the past thirty years, has extensive family ties, has employment, and cares for his family. *Id.*  ¶ 27.

He asserts that ICE has not revoked his Order of Supervision, has not conducted a post-custody order review, and has not obtained travel documents from Vietnam. *Id.* ¶ 31. He also asserts there is no evidence that any concrete steps have been taken to obtain a travel document from Vietnam. *Id.* ¶ 32. He has not been interviewed by the Vietnamese government, and his family members have not been contacted by Vietnam or ICE regarding the repatriation process. *Id.*

On February 13, 2025, Enforcement and Removal Operations ("ERO") provided Nguyen with a DHS Form I-217, Information for Travel Document or Passport, and a passport application. Ortez Decl. ¶ 8. Petitioner filled out the provided documents. *Id*. On March 10, 2025, "ERO initiate[d] travel document request coordination."  Ortez Decl. ¶ 9.

3

On November 7, 2025, ERO reached out to the assigned Detention and Deportation Officer to request a status update on the issuance of travel documents for Petitioner. Ortez Decl. ¶ 11. On November 17, 2025, ERO contacted the Vietnamese consulate to request a status update on the issuance of travel documents for Petitioner. Ortez Decl. ¶ 12.

On November 19, 2025, ERO contacted translation services to request translation of three documents from English to Vietnamese. Ortez Decl. ¶ 13.  On December 3, 2025, Respondents received the translated documents and the travel document request was submitted to ERO headquarters.  Ortez Decl. ¶ 14.

II.      **Repatriation Process to Vietnam.**

Petitioner describes the repatriation process to Vietnam as follows. Before a Vietnamese citizen can be repatriated, Vietnam must first issue a passport or other travel documents in response to a request from ICE. Pet. ¶ 33.

Between the end of the Vietnam war in 1975 and 2008, Vietnam refused to repatriate any Vietnamese citizen who had been ordered removed from the United States. *Id.* ¶ 34. In 2008, Vietnam agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995, but not those who arrived before July 12, 1995. *Id.*  ¶ 35. Between 2017 and 2019, ICE requested travel documents for pre-1995 Vietnamese immigrants 251 times. Vietnam granted those requests only 18 times.  *Id.* ¶ 36.

In November 2020, the U.S. and Vietnam signed a Memorandum of Understanding ("MOU") that created a process for deporting pre-1995 immigrants to Vietnam.  *Id*. ¶ 37. Section 4 of the MOU obligates the U.S. and Vietnam to consider specific factors prior to deciding whether to remove a Vietnamese citizen or whether to accept a Vietnamese citizen for repatriation. *Id.*  ¶ 38. If a person meets these criteria, ICE is expected to put together a documentation package for

Vietnam, including a self-declaration form from the individual to be removed, copies of identity and citizenship documents, copies of the final order of removal, and criminal records. *Id.* ¶ 40. The process to secure a travel document for a pre-1995 immigrant is multilayered and lengthy, requiring interviews and verification by authorities in Vietnam. *Id.* ¶ 42. Between September 2021 to September 2023, Vietnam issued travel documents to only four pre-1995 Vietnamese immigrants, whom ICE sought to remove from the United States. *Id.* ¶ 41.

### III.   The Habeas Petition.

Petitioner asserted the following claims in his Petition:

Count One: Substantive Due Process

Count Two: Procedural Due Process

Count Three: Administrative Procedure Act

In each count, Petitioner asserted that Respondents improperly detained him by failing to follow their regulations. Petitioner asserted that he was on release under an Order of Supervision pursuant to § 1231(a)(3) or (a)(6), and Respondents failed to follow the procedures set forth in their regulations when they detained him. *See, e.g.,* Pet. ¶¶ 97, 106. Petitioner did not expressly assert a *Zadvydas* claim. However, each count also incorporated paragraphs 1-84, which included allegations that his removal is not significantly likely in the reasonably foreseeable future. *See, e.g.,* Pet. ¶ 28 (Petitioner "has now remained detained for over ten (10) months with no indication that his removal is likely in the reasonably foreseeable future.").

### LEGAL STANDARDS

### I.   Habeas Law.

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to

every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

II.    **Standard of Review for Proposed Findings and Recommended Disposition**.

This matter is before the Court on the Magistrate Judge's PFRD. "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. One Parcel*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). The Tenth Circuit has adopted a firm waiver rule, where the failure to make timely and specific objections to a PFRD waives both district court and appellate review. *Id.* at 1060. The Court reviews the record relevant to the objections *de novo*. *Id.*

An objection must be sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute. *Id.* at 1059-60. By contrast, an objection that is "nonspecific, too general, and fails to meaningfully address the PFRD's ultimate holding or its underlying findings and conclusions[]" may be deemed waived. *Leal v. United States*, No. CIV 22-761 JB/JFR, 2023 WL 6360864, at *4 (D.N.M. Sept. 29, 2023); *see also Shepherd v. Rios*, No. CIV-17-0427-HE, 2018 WL 1866111, at *1 (W.D. Okla. Apr. 18, 2018) (deeming waived objection that "d[id] not attempt to come to grips with the [PFRD's] analysis or conclusions in any specific way, [but] rel[ied] for the most part on re-adopting . . . earlier arguments."). The failure to file

6

specific objections waives *de novo* review by the district court. *See One Parcel*, 73 F.3d at 1060-61.

## DISCUSSION

I. <u>**Respondents violated Petitioner's due process rights by detaining him without revoking his conditions of release or by failing to follow regulations when detaining him.**</u>

Petitioner asserts that his procedural due process rights were violated when he was taken into custody without Respondents following the procedures set forth in 8 C.F.R. § 241.4(*l*) and § 241.13(i)), such as revoking his Order of Supervision, providing him notice, or providing him an informal interview. The Court agrees.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore v. Kim*, 538 U.S. 510, 522 (2003) ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural

7

due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.' ") (quoting *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009)).

### A.    The Court will address the due process argument.

The Magistrate Judge recommended that the Court not address this due process claim, because it is moot.  In support, she cites *S. Utah Wilderness All. v. Smith*, 110 F.3d 724 (10th Cir. 1997). That case held that a claim to force agency action was moot when the agency voluntarily acted. But that case did not hold that a district court loses jurisdiction to rule on one claim when it grants relief simultaneously on another claim in the same opinion. Petitioner asserted two grounds for a violation of his due process rights: (1) Respondents failed to follow their regulations in revoking his release under § 1231(a)(3) or (a)(6), and (2) his detention violates *Zadyvdas*. To be sure, courts of appeals sometimes only rule on one ground necessary to affirm or reverse a district court's decision and conclude that ruling on other grounds is unnecessary. But by addressing both grounds for a due process violation, a district court may avoid the need for a remand to address the remaining claims. For the purpose of a full record, the Court will address both theories underpinning the due process violation.

### B.    Petitioner had a liberty interest in the procedures set forth under 8 C.F.R. § 241.4(*l*) and § 241.13(i), and he was not provided process under those regulations.

Petitioner has a liberty interest in the procedures set forth under 8 C.F.R. § 241.4(*l*) and § 241.13(i). As explained below, Respondents violated these regulations by failing to show they revoked his Order of Supervision, failing to consider whether removal was significantly likely in the reasonably foreseeable future, and failing to provide notice or an informal interview as provided under those provisions.

8

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). A noncitizen who is considered to have not entered the country is only entitled to "the procedure authorized by Congress." *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). However, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Petitioner is at least entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218. The process set forth under 8 C.F.R. § 241.4(*l*) and § 241.13(i) provides the procedure for the detention of a person on release under § 1231(a)(3) or (a)(6).

Here, Petitioner was admitted into the United States, was at one point a legal permanent resident, and has lived in the United States for decades. Petitioner was on release under an Order of Supervision pursuant to § 1231(a)(3) or (a)(6). Under § 1231(a)(3), "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). As here, certain noncitizens may be detained beyond the removal period or released under the terms of supervision under § 1231(a)(3). *See* § 1231(a)(6). Here, after Respondents were unable to remove Petitioner, he was released and placed on an Order of Supervision for twenty years.

As relevant here, supervised release under § 1231(a)(3) or (a)(6) may be revoked as follows. *See* 8 C.F.R. § 241.4(*l*)(1), (2). First, for certain noncitizens, revocation of release may be ordered if the noncitizen "violates the conditions of release." *Id.* § 241.4(*l*)(1). Second, "[r]elease

may be revoked in the exercise of discretion" by certain DHS officials when, "in the opinion of the revoking official," one of four enumerated factors is applicable. *Id.* § 241.4(*l*)(2).

Section 241.4(*l*)(3) outlines a "normal review process" that begins "with notification to the alien of a records review and scheduling of an interview," as well as a "custody review" that "include[s] a final evaluation of any contested facts relevant to the revocation and determination whether the facts as determined warrant revocation and further denial of release." *Id*. § 241.4(*l*)(3). The notification therefore explains why his release is being revoked, and the interview and custody review constitutes an opportunity to challenge that decision.

Moreover, 8 C.F.R. § 241.13(i) governs the revocation of conditions of release for a person who was subject to a final order of removal and placed on release after expiration of the removal period. First, a noncitizen may be returned to custody if they violated any condition of release. § 241.13(i)(1). Respondents do not assert that Petitioner violated any condition of release. Next, Respondents may revoke a noncitizen's release if "on account of changed circumstances, the Service determines there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i)(2). Respondents do not point to any changed circumstances under § 241.13(i)(2).

Section 241.13(i)(3) provides the procedures for revocation of conditions of release. It provides that upon revocation the noncitizen will be notified of the reasons for revocation. It also provides that Respondents will conduct an informal interview promptly after the noncitizen's return to custody, allowing the noncitizen to submit evidence to show that there is no significant likelihood he will be removed in the reasonably foreseeable future. *Id.* Respondents will then determine whether the facts warrant revocation and further denial of release. *Id.*

In sum, "ICE's decision to re-detain a noncitizen…who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (*citing* 8 C.F.R. § 241.13(i)(2)). Respondents must make a contemporaneous determination.  *Id.*

Here, the record before the Court does not suggest that any of these procedures were followed. Nothing in the record suggests that the Order of Supervision was ever revoked. Petitioner asserted that he was detained without Respondents revoking his Order of Supervision or providing him notice or an explanation.  Pet. ¶¶ 25, 31. Respondents do not argue or present any evidence that the Order of Supervision was revoked at all. Respondents did not provide any documentation setting forth the reason for any revocation. Nothing in the record suggests that Petitioner ever received notice under § 241.4(*l*) or § 241.13(i), or an informal interview. Moreover, nothing in the record suggests that any procedure under § 241.4(*l*)(3) or § 241.13(i)(3) was followed. For example, no records were provided suggesting that a custody review occurred as set forth under § 241.4(*l*)(3) or § 241.13(i)(3). Therefore, based on the record before the Court, the Court is unable to conclude that Petitioner received the process under § 241.4(*l*) or § 241.13(i).

Petitioner asserts that some of these procedures must occur before detention. The Court need not decide whether Respondents were required to follow these procedures before Petitioner was detained, as Respondents do not provide evidence that these procedures were followed at all, either before or after detention.

Petitioner is entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218; *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process

Clause and does not extend to imposing procedures that merely displace congressional choices of policy."). While the regulations grant Respondents significant discretion, Petitioner has a liberty interest in Respondents properly revoking his Order of Supervision.

Thus, the Court concludes that after being released under § 1231(a)(3) or (a)(6), Petitioner had a liberty interest in the procedures under § 241.4(*l*) and § 241.13(i), which set forth the procedures Respondents were required to follow in re-detaining him. Petitioner asserted in his Petition that Respondents did not follow those procedures, and Respondents failed to present evidence that they followed those procedures. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned.").

**C.      Considering the *Mathews* factors, the failure to follow the regulations under § 241.4(*l*) and § 241.13(i) violated Petitioner's due process rights.**

Having established that Petitioner has a protected interest in Respondents following the regulations authorized by Congress, the Court will consider what process is due. In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

12

*First*, Petitioner's interest in being free from detention is very strong. *See Hamdi*, 542 U.S. at 529 (finding that freedom from detention is "the most elemental of liberty interests"). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Petitioner's interest in receiving the procedural protections authorized by Congress is also at stake. *See Sierra*, 258 F.3d at 1218. Petitioner was released under an Order of Supervision under § 1231(a)(3) or (a)(6). He has lived in the United States under the Order of Supervision for twenty years. 8 C.F.R. § 241.4(*l*) and § 241.13(i) provide the procedure for revoking and detaining a person under an Order of Supervision. Respondents have not provided any evidence to suggest that his Order of Supervision was revoked, the reasons for that revocation, whether Petitioner received notice of those grounds for revocation, and whether a review under § 241.4(*l*)(3) or § 241.13(i) occurred. Moreover, under these regulations, Respondents were required to evaluate whether removal was significantly likely in the reasonably foreseeable future such that he should be detained. Even balanced against the "broad power over naturalization and immigration" possessed by Congress that justifies "rules that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 521 (2003), Petitioner possesses two interests that tip the scale in his favor. Thus, the Court finds that the first *Mathews* factor heavily favors Petitioner.

*Second*, the risk of erroneous deprivation by failing to follow the procedure under § 241.4(*l*) or § 241.13(i) is high. Petitioner was previously detained to effectuate his removal from the country and eventually released under § 1231(a)(3) or (a)(6). Petitioner was taken into custody without any process under § 241.4(*l*) or § 241.13(i). Petitioner spent many months in detention

with little effort taken to effectuate his removal from the country.  Had Respondents followed the procedure set forth under the regulations, Respondents would have considered whether his detention was necessary to effectuate his removal or whether his removal was significantly likely in the reasonably foreseeable future. Given that little to no action was taken to effectuate his removal, it appears there was a significant erroneous deprivation of his rights.

*Third*, the Government's interest in not providing process under its own regulations is slight to nonexistent.

To be sure, when considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at 518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno*, 507 U.S. at 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

However, the regulations at issue provide the process for taking a person into custody after they have been released under § 1231(a)(3) or (a)(6). The Court finds that Respondents have little to no interest in not following the procedure set forth in their own regulations. While the Respondents surely have a strong interest in removing a person who is subject to a final order of removal, they have little to no interest in keeping a person in custody where they do not take action to remove them. The declaration submitted by ICE Assistant Field Office Director Jose P. Ortez does not state that Petitioner was arrested because removal was believed to be imminent or significantly likely. *See* Ortez Decl., Doc. 12. In this case, custody appears merely punitive.

14

Finally, Respondents have not argued there are any undue fiscal or administrative burdens in following their own regulations.

Balancing the *Mathews* factors, the Court concludes that the process due to Petitioner was the process set forth in the regulations, and that the failure to provide that process violated his due process rights. Moreover, considering the *Mathews* factors, the Court concludes that release is the appropriate remedy.

The Court's conclusion is consistent with the conclusions of other district courts, which have "found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3-4 (W.D. Okla. Dec. 1, 2025) (internal quotation marks omitted); *see also Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025); *Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *7 (W.D. Okla. Jan. 15, 2026).

## II.    Alternatively, Respondents have failed to show that Petitioner's removal from the country is significantly likely in the reasonably foreseeable future.

Petitioner asserts that his removal from the country is not significantly likely in the reasonably foreseeable future in violation of *Zadvydas*. Petitioner made an initial showing that his removal was not significantly likely in the reasonably foreseeable future. As explained below, the burden shifted to Respondents to show that his removal is significantly likely in the reasonably foreseeable future, whether to Vietnam or to a third country. Respondents failed to make such a showing, and therefore Petitioner is entitled to immediate release under *Zadvydas*.

*First*, the Magistrate Judge recommended that the *Zadvydas* claim be granted. Respondents summarily objected to the PFRD's recommendation that Respondents failed to satisfy their burden, which is not sufficiently specific to preserve a right to *de novo* review by a district judge. Obj.,

15

Doc. 16 at 2. Respondents only generally asserted that they met their burden by requesting travel documents. *Id.*; *See One Parcel*, 73 F.3d at 1060 ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."). Therefore, the Court adopts the PFRD as undisputed and grants the habeas petition.

Respondents also objected that Petitioner failed to assert a *Zadvydas* claim at all. The Court overrules Respondents' objection and concludes that the *Zadvydas* claim was adequately asserted in the Petition. To be sure, Petitioner did not *expressly* assert a *Zadvydas* claim in Counts One through Three. Each count focused on the failure to follow the process set forth in regulations when he was detained. But the Petition also asserted a due process claim, asserted extensive facts suggesting that removal was not reasonably foreseeable, and expressly asserted that removal was not reasonably foreseeable. Pet. ¶¶ 5, 28, 58. These paragraphs were all expressly incorporated into Counts One through Three. Pet. ¶¶ 85, 92, 103. The Court finds that the Petition sufficiently asserted a *Zadvydas* claim and gave Respondents sufficient notice to respond to the claim.

*Second*, only assuming Respondents' objection was sufficiently specific to preserve *de novo* review, the Court in the alternative conducts a *de novo* review of the record and concludes that the Petition should be granted because the record does not show that Petitioner's removal from the country is significantly likely in the reasonably foreseeable future.

An immigration detainee "in custody in violation of the Constitution or laws or treaties of the United States" may seek habeas relief. 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678 (2001). Pursuant to the Immigration and Nationality Act, the Respondents must remove a noncitizen within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day

removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i).

Upon expiration of the initial removal period, the Respondents may continue to detain the noncitizen, but not indefinitely. *Id.* § 1231(a)(6); *Zadvydas*, 533 U.S. at 699. Continued detention for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. After six months, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Respondents must then rebut the noncitizen's showing with evidence. *Id.*

Petitioner provided good reason to believe that there is not a significant likelihood of removal in the reasonably foreseeable future. In short, Petitioner asserted that the Respondents have taken little action to remove him over the course of the past year, the travel document request is pending without any indication that documents will be issued by Vietnam, and Vietnam generally does not accept the return of those who left prior to 1995 and lack family in Vietnam.

Petitioner asserts as follows. After more than a year in custody Vietnam has not issued him travel documents, and there is no indication they would issue travel documents.  Doc. 14-1 at ¶ 18. Moreover, as explained below, he asserts that his removal to Vietnam is not likely as he arrived in the United States before 1995 and he does not have family members in Vietnam. Doc. 14-1 at ¶ 17.  Between the end of the Vietnam War in 1975 and 2008, Vietnam refused to repatriate any Vietnamese immigrant who had been ordered removed from the United States.  Pet. ¶ 34. However, the Petition asserted that in 2008 Vietnam agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995, but not those who arrived before July 12, 1995. *Id.* ¶ 35. Between 2017 and 2019, ICE requested travel documents for pre-

1995 Vietnamese immigrants 251 times, and Vietnam granted those requests only 18 times. *Id.* ¶ 36.

In November 2020, the United States and Vietnam signed a memorandum of Understanding that created a process for deporting pre-1995 immigrants. *Id.* ¶ 37. The MOU obligates the United States and Vietnam to consider specific factors prior to deciding whether to remove a Vietnamese citizen. *Id.* ¶ 38. These factors are not publicly known. *Id.* ¶ 39. Under the MOU, if a person meets the criteria, ICE is expected to put together a package for Vietnam to include a self-declaration form from the individual to be removed, copies of identify and citizenship documents, and copies of the final order of removal and any criminal records. *Id.* ¶ 40. Between September 2021 to September 2023, Vietnam issued travel documents to only four pre-1995 Vietnamese immigrations whom ICE sought to deport. *Id.* ¶ 41.

Petitioner also presented a declaration by Tin Thanh Nguyen. Doc. 14-1. He explains that "[w]hen a person has no remaining family in Viet Nam or no one who can confirm their identity or residence," as is the case for Petitioner Nguyen, "the Vietnamese government often does not move forward with the verification process," required to issue travel documents. Doc. 14-1 at ¶¶ 11, 17.

Thus, Petitioner asserts he has been held since January 20, 2025 without the issuance of travel documents, without any indication by Vietnam that they would accept him, and with little to no chance that Vietnam will repatriate a citizen who left Vietnam before 1995 and lacks family in Vietnam. Petitioner has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.

After a petitioner has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the respondents to

rebut the showing. *Zadvydas*, 533 U.S. at 701. Respondents must provide "evidence" in rebuttal. *See id.* In response, the Federal Respondents submitted a Declaration by Assistant Field Office Director Jose P. Ortez. *See* Doc. 12. The Ortez Declaration suggests that little action has been taken to attempt to remove him.  Petitioner was taken into custody on January 20, 2025.  Ortez Decl. ¶ 6.  On March 10, 2025, ERO initiated "travel document request coordination." Ortez Decl. ¶ 9. Since then, ERO reached out to request a status update on April 22, November 7, and November 17. Ortez Decl. ¶¶ 10-12. Some documents were translated from English to Vietnamese. Ortez Decl. ¶¶ 13-14.  Although Respondents have reached out to Vietnam multiple times, they do not provide Vietnam's response or state that Vietnam has indicated any likelihood that they would accept Petitioner.

In sum, the Ortez Declaration does not provide any facts to suggest that travel documents are significantly likely to be issued in the reasonably foreseeable future.  Moreover, Respondents do not attempt to rebut Petitioner's assertion that Vietnam is unlikely to issue travel documents to a refugee who left before 1995 and lacks relatives in Vietnam. Therefore, for the reasons stated herein and in the PFRD, the Court concludes that Respondents have not established that there is a significant likelihood of removal in the reasonably foreseeable future.

## III.    Petitioner does not have a claim under the Administrative Procedure Act.

Petitioner also asserts an APA claim. The APA provides a cause of action only where there is no other adequate remedy in court. 5 U.S.C. § 704. Challenges to the fact or duration of immigration detention are cognizable in habeas and "must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). In a concurring opinion, Justice Kavanaugh explained that "claims under the APA are not available when there is another 'adequate remedy in a court,' ...." *Trump v. J.G.G.*, 604 U.S. at 674 (Kavanaugh, J., concurring). He further explained that "habeas corpus, not the

APA, is the proper vehicle here." *Id.* Because the relief Petitioner seeks, release from custody, is attainable through habeas corpus, the APA does not supply an independent cause of action.

**CONCLUSION**

As explained above, the Court concludes that Respondents violated Petitioner's due process rights for two alternative reasons:

- Respondents violated Petitioner's due process rights by failing to follow their own regulations when they detained him while he was on release under § 1231(a)(3) or (a)(6); and

- Respondents violated Petitioner's due process rights under *Zadvydas*, as he has been detained for over a year without a significant likelihood of removal in the reasonably foreseeable future.

Therefore, Petitioner shall be immediately released under the same conditions of supervision he was subject to prior to his detention. The parties are ordered to file a status report within **three (3) days** of the entry of this order. The Court will enter a separate judgment.[1]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part** for the reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that the Proposed Findings and Recommended Disposition (Doc. 15) are **ADOPTED** in part and **REJECTED** in part.

**IT IS FURTHER ORDERED** that Respondents shall immediately release Petitioner under the same conditions of supervision he was subject to prior to his detention.

---

[1] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).

20

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within three (3) days of the entry of this order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE